DA 11-0176

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 235N

IN THE MATTER OF:

J.T.J.A.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DN 09-038A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Joslyn Hunt, Chief Appellate Defender; Matthew M. Wilcox, Assistant
Appellate Defender, Helena, Montana (Father)

        Joseph P. Howard, Attorney at Law, Great Falls, Montana (Mother)

    For Appellee:

        Steve Bullock, Montana Attorney General; Sheri K. Sprigg, Assistant
Attorney General, Helena, Montana

        Ed Corrigan, Flathead County Attorney; Emily von Jentzen, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs:   August 24, 2011
Decided:   September 20, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellants G.A., the birth father, and K.A., the birth mother, appeal the orders of the Eleventh Judicial District Court, Flathead County, terminating their parental rights. We affirm.

¶3 J.T.J.A. was born prematurely in September 2006. He finally went home from the hospital in December 2006. He suffers from a "moderately severe" case of neurofibromatosis, a genetic disorder that causes growths on nerves in many parts of the body and large moles or tumors on the skin. He also suffers from developmental delays.

¶4 The Montana Department of Health and Human Services, Child and Family Services Division (Department) received the first of eight referrals regarding J.T.J.A. in January 2007, about a month after he came home from the hospital. The Department referred the parents to Family Concepts for in-home services in February 2007 under a voluntary agreement. A series of social workers worked with the family throughout 2007, 2008, and 2009. The social workers expressed concern regarding G.A.'s and K.A.'s parental abilities.

¶5 The Department removed J.T.J.A. from his parents' custody on April 3, 2009, and placed him with a foster family. The District Court, without objection, adjudicated J.T.J.A. to be a youth in need of care on May 8, 2009. K.A. did not oppose the petition. Her counsel

2

simply stated at the hearing that she hoped that the court would consider a kinship placement with J.T.J.A.'s maternal grandmother.

¶6     The District Court approved treatment plans for G.A. and K.A. on August 7, 2009. The plans contained very specific goals, including the requirement that G.A. not interfere with the process of speech therapy for J.T.J.A. and that G.A. ask questions only at the end of each session. The plan further required K.A. and G.A. to remove cat and dog waste products from the home at least daily, if not more often. G.A. and K.A. signed the treatment plan. They raised no objections at that time.

¶7     G.A. and K.A. raised some concerns with the treatment plan during its implementation. They contended that the Department had written the treatment plan in language that they were not able to comprehend easily. G.A. and K.A. cited their own learning disabilities as impediments to being able to complete the treatment plan.

¶8     The Department eventually moved to terminate G.A.'s and K.A.'s parental rights on October 8, 2010. Several social workers testified during the hearing regarding the trauma that J.T.J.A. would suffer upon learning that he had a visit scheduled with the parents, or when he heard his parents' voices in the next room as social workers prepared him for a visit. The social workers further testified, along with the foster parents, about the trauma that J.T.J.A. experienced upon return from visits with his parents. The District Court terminated G.A.'s and K.A.'s parental rights. They appeal separately.

¶9     G.A. and K.A. both argue on appeal that the treatment plan was inappropriate due to their learning disabilities. They concede that they failed to object to the treatment plan until

3

the termination hearing. They urge the Court to overlook this omission due to the fundamental rights at stake.

¶10 We review for an abuse of discretion a district court's decision to terminate parental rights. *In re I.B.*, 2011 MT 82, ¶ 18, 360 Mont. 132, 255 P.3d 56. We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions. It is manifest on the face of the briefs and record before us the District Court did not abuse its discretion in terminating the parental rights of G.A. and K.A.

¶11 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE